IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANNE APODACA,

        Petitioner,

v.                                                                     CIV 02-873 MV/KBM

BILL SNODGRASS, Warden, et al.,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

      In separate trials, juries convicted Anne Apodaca ("Apodaca" or "Petitioner") and her mother Frizelle Aguilar ("Aguilar") as accessories and for conspiracy to the first degree murder of Apodaca's husband. The juries also convicted them of tampering with evidence and conspiracy to do the same. Apodaca's jury found her guilty in 1991, the trial court sentenced her in 1992, and the New Mexico Supreme Court affirmed her conviction in 1994. *See Doc. 11,* Exhs. A-B; *see also State v. Apodaca,* 118 N.M. 762, 887 P.2d 756 (1994); *State v. Aguilar,* 117 N.M. 501, 873 P.2d 247 (1994), *cert. denied,* 513 U.S. 859, 865 (1994).

      On July 22, 2002, approximately eight years after her conviction became final, Anne Apodaca filed her petition for a writ of habeas corpus with this court under 28 U.S.C. § 2254. *Doc. 1.* Soon thereafter she filed a motion for appointment of counsel. *Doc. 8.* Because Apodaca filed after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), its one-year statue of limitations applies. The limitations period runs "from the latest" of four possible periods, one of which is the date the conviction became

final. Those prisoners like Apodaca, whose convictions became final before the effective date of AEDPA, were given a grace period until April 23, 1997 to file. However, another of the possible starting points is implicated here – 28 U.S.C. § 2244(d)(1)(D), which provides that the statute runs anew from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See e.g., Burger v. Scott,* ___ F.3d ___, 2003 WL 152736 * 4 (10th Cir. 1/15/03).[1] This matter is before the court on Apodaca's petition and motion, as well as Respondents' Answer and motion to dismiss the petition as untimely. *Docs. 11, 12.* I find that the AEDPA statute of limitations stands as a bar to this action.

At the time of the trials, the prosecution could not identify with certainty who actually fired the shot that killed Apodaca's husband. But it did present circumstantial evidence tending to show that the shooter could have been Petitioner or her mother, both of whom had guns and personal and financial reasons for wanting to kill him,[2] or that the shooter could have been

---

[1] Since the opinion is not reported yet, I set forth the relevant passage:

> Congress did not draft the federal limitations period to begin running only at the end of a particular state's exhaustion process. Instead, the statute is clear that the limitations period starts from the latest of four specific dates, but that the period may be tolled once the state court exhaustion process has begun. See § 2244(d)(1),(2). In the present case, our review of the record convinces us that the district court was correct in concluding that Burger's case was governed by § 2244(d)(1)(D), thus starting a one-year limitations period beginning on February 17, 1999, the undisputed date Burger learned of the change in his parole reconsideration date. Burger's federal application, filed on December 13, 2000, was therefore untimely absent some reason to toll the statute.

*Burger,* 2003 WL at * 4.

[2] For example, Apodaca claimed that her husband drank and was abusive to her and that, although she wanted a divorce, she also wanted their house. She believed if she pursued a divorce, she would forfeit

someone hired by either of them, since both Petitioner and her mother had solicited assistance in killing the husband before the murder.

In addition, the prosecution introduced evidence showing that Petitioner and her mother relayed different stories to the police, thereby focusing the investigation on them. The prosecution introduced incriminating evidence of insurance policy information in Apodaca's briefcase that was seized from the mother's home. Moreover, on the day after the shooting, both Petitioner and her mother opened a safety deposit box from which the murder weapon was seized. The date on the deposit box application had been altered to reflect the day prior to the murder. A few days after the murder, Petitioner's mother fled to South Carolina. *See Apodaca,* 118 N.M. at 761–63, 887 P.2d at 767-69; *State v. Aguilar,* 117 N.M. at 503-05, 873 P.2d at 249-51; *see also Answer,* Exh. N at 4-47.

At Petitioner's trial, her mother testified that Apodaca could not have been the shooter and knew nothing about the murder because Petitioner was sleeping with her mother and was under the influence of a Valium at the time in question. While consistently maintaining that Apodaca did not plan or execute the shooting, at her daughter's trial Aguilar denied her own involvement as the shooter or planner. She persisted in the denial despite a letter to her ex-husband in which she stated that Apodaca knew "nothing about the events of what actually happened. . . . I arranged everything! I am responsible!" *See Apodaca,* 118 N.M. at 761, 887 P.2d at 767; *State v. Aguilar,* 117 N.M. at 504, 873 P.2d at 250; *see also Answer,* Exh. N at 34, 36-37, 38.

---

the home. The mother, who was paying the mortgage on Apodaca's home, alleged that she was raped by her son-in-law approximately six months before the murder. In short, both contended that Apodaca's husband was threatening and dangerous.

3

Petitioner asks this court to consider her petition timely because in April 1999, a jail incident triggered her mother to have a "new" revelation. *See Doc. 14* at 1 (listing April 1999 as date the new evidence "unearthed itself"); *Doc. 13,* Exh. B (May 4, 1999 letter from attorney Neils L. Thompson, who interviewed the mother in late April or early May 1999).  That is, the mother suddenly remembered that she left Apodaca asleep in the mother's bed, and went to Petitioner's house to confront the husband, who had been telephoning and threatening the mother and Apodaca if Petitioner did not return home.  The husband was in possession of the mother's gun when the mother arrived and brandished the gun while becoming lewd with her.  Once she calmed him down, she acted as though she left the residence but actually lurked within the house until the husband went to sleep.  She then shot him.  *See Doc. 13,* Exh. B (transcribed interview of mother by attorney Thompson).

Petitioner further contends that she was subsequently able to obtain three more pieces of evidence by March 2002 that corroborate her mother's new version of the events:  (1) Aguilar's medical records that showed while imprisoned in 1992 for the crime, her mother confessed to shooting the husband; (2) an affidavit from her mother's South Carolina attorney who states that the mother confessed to the murder upon her flight from New Mexico; and (3) investigation records that show the husband himself was a murderer.  *See Doc. 14* at 1; *Doc. 13,* Exh. B.  Notwithstanding this evidence, Petitioner fails to meet the statutory limitations period for two independent reasons.

First, § 2244(d)(1)(D) is unavailing if the evidence is not "new" and could have been discovered with diligence.  *See Flanagan v. Johnson,* 154 F.3d 196, 199 (5th Cir. 1998) (§ 2244(d)(1)(D) does not "convey a statutory right to an extended delay . . . while a habeas

4

petitioner gathers every possible scrap of evidence that might . . . support [her] claim."); *Laster v. Booher,* 2000 WL 368429 (10th Cir.) (unpublished) ("because the information in the Narrative Response was not new evidence, Mr. Laster's claims do not fall within the tolling provision of § 2244(d)(1)(D) and he is time barred"), *cert. denied,* 531 U.S. 897 (2000).  I agree with the conclusion of the state district court that this evidence is not new.  *See Answer,* Exh. W.  The mother's new revelation and the other three pieces of evidence simply embellish the mother's original testimony that Petitioner's husband was menacing and that because the mother provided her daughter with an alibi, someone other than Apodaca shot the husband.

      Second, even assuming the mother's revelation constitutes newly-discovered evidence that could not have been obtained sooner, by her own account Petitioner was aware of the new evidence in April 1999.  The other documentation she secured after the mother's statement does not give rise to a new limitations period because the evidence merely corroborates the mother's "new" statement.  *See Pacheco v. Artuz,* 193 F. Supp. 2d 756, 760 (S.D.N.Y. 2002) (new one-year period begins to run from date petitioner on notice of facts, not date on which petitioner has in possession evidence to support claim).  Accordingly, from April 1999, Apodaca would have had until April 2000 to file her federal petition.  She did not.  Instead, she used the mother's new statement to pursue a request for clemency in May 1999 through her attorney Neils Thompson. *See Doc. 13,* Exh. B.

      It appears that only one circuit has considered whether petitions for clemency qualify to toll the limitations period in light of recent Supreme Court opinions concerning AEDPA, and it held they do not.  *Marilynn R. Malcom v. Alice Payne,* 281 F.3d 951, 957 (9th Cir. 2002).  I find the reasoning of that opinion sound and adopt it as persuasive because clemency is a matter that

5

falls outside the state judicial process. *See e.g., id.* at 960 ("Considering the twin purposes of AEDPA – (1) accelerating the federal habeas process, and (2) promoting comity between the federal and state judiciaries by protecting the state courts' role in the enforcement of federal law, . . . we conclude that a state prisoner's petition for clemency is not 'State post-conviction or other collateral review,' and therefore does not toll AEDPA's limitations clock."); *see also e.g., Carey v. Saffold,* 536 U.S. 214, ___, 122 S.Ct. 2134, 2138 (2002) ("AEDPA's limitations period--with its accompanying tolling provision . . . 'promotes the exhaustion of state remedies while respecting the interest in the finality of **state court judgments**.' *Duncan v. Walker,* 533 U.S. 167, 178 (2001)") (emphasis added).

After the denial of clemency, the earliest of Petitioner's other state ***court*[3]** pleadings was file-stamped July 2000, in other words several months after the expiration of the new April 2000 limitations period. However, state proceedings filed outside the limitations period do not count toward tolling. *E.g., Fisher v. Gibson,* 262 F.3d 1135, 1142 (10th Cir. 2001) ("Fisher's petitions cannot be tolled for time spent in state post-conviction proceedings because his applications for post-conviction relief were not filed until after April 24, 1997, the end of the limitations period"), *cert. denied,* 122 S. Ct. 1789 (2002). Thus, Plaintiff failed to timely file her federal habeas petition even if the statute began to run anew upon her mother's new statement.

Finally, there are no "rare and extraordinary" grounds upon which to equitably toll the statute. The record does not establish any circumstances that prevented Plaintiff from filing her

---

[3] She sent an undated letter *pro se* to the Governor requesting clemency based on the additional information she eventually obtained (mother's medical records and mother's attorney's affidavit) as of sometime in 2002. This request was also denied for the same reasons as the Governor gave in his February 11, 2000 letter. *See Doc. 1* (exhibits thereto).

federal petition within one year of discovering her mother's new statement.  Her *pro se* status, ignorance of the law, and lack of entitlement to an attorney in collateral proceedings will not suffice.  *See e.g., Burger,* 2003 WL at *7; *Marsh v. Soares,* 223 F. 3d 1217, 1220 (10th Cir. 2000), *cert. denied,* 531 U.S. 1194 (2001);  *Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.), *cert. denied,* 525 U.S. 891 (1998).

Moreover, as the New Mexico Supreme Court noted, because Petitioner and her mother were charged as accessories, the issue was not who actually shot the husband, but whether Petitioner and her mother participated in the events that led to his death.  Indeed, the New Mexico Supreme Court found the evidence against both Apodaca and her mother "overwhelming" and thus sufficient to support the guilty verdicts.  *Apodaca,* 118 N.M. at 768, 887 P.2d at 762; *Aguilar,* 117 N.M. at 505, 873 P.2d at 251.  I concur.  The four pieces of "new" evidence tendered do not change the underlying facts that supported the convictions.  As such, Petitioner cannot meet the "actual innocence" exception to the limitations period.  *See Miller,* 141 F.3d at 978; *Whitebird v. Snider,* 28 Fed. Appx. 783, 786, 2001 WL 1345095 *2 (10th Cir. 2001) ("'actual innocence' exception requires a showing that there is new evidence, not present in the trial, that makes it 'more likely than not that no reasonable juror' would have convicted the petitioner."), *cert. denied,* 123 S. Ct. 135 (2002).

All of the issues can be resolved on the record, such that an evidentiary hearing is unnecessary.  *E.g., Trice v. Ward,* 196 F.3d 1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), *Rules Governing Habeas Corpus Under Section 2254.*  Consequently, appointment of counsel is not warranted.  *See e.g., Swazo v. Wyoming Dept. of Corrections,* 23 F.3d 332, 333 (10th Cir. 1994).

Wherefore,

**IT IS HEREBY RECOMMENDED** that the § 2254 petition be dismissed as time-barred and Petitioner's motion for appointment of counsel be denied.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE

8